698 P.2d 1304

**STATE of Arizona, Appellee,**

v.

**Marvin RYPKEMA, Appellant.**

**No. 1 CA–CR 7863.**

Court of Appeals of Arizona,
Division 1, Department A.

April 18, 1985.

---

Robert K. Corbin, Atty. Gen. by William J. Schafer, III, Chief Counsel, Crim. Div., Robert S. Golden, Asst. Atty. Gen., Phoenix, for appellee.

Anders V. Rosenquist, Jr. and Associates by William J. Crimmins, Phoenix, for appellant.

## OPINION

FROEB, Judge.

Appellant Marvin C. Rypkema and his wife, Gwenn M. Rypkema, were charged with the crime of possession of marijuana, a class six felony, in violation of A.R.S. § 13–3405. Before trial, they moved to suppress as evidence all items seized from their home pursuant to a search warrant executed on June 11, 1983. A suppression hearing was held before the judge who had issued the warrant, at which time testimony was given by appellant's wife, Gwenn, and Sergeant Jack Judd, who had prepared the affidavits accompanying the requested search warrant. The trial court denied the motion.

At the time set for trial, the case against appellant's wife was dismissed with prejudice. Appellant waived his right to jury trial and the case was submitted to the court based on the grand jury transcript and the transcript from the suppression hearing. The court found appellant guilty as charged and sentenced him to a fine of $500.00, plus a surcharge, for a total of $685.00.

Appellant raises three issues on appeal:
(1) Whether there was sufficient probable cause to justify the issuance of the search warrant for appellant's home;
(2) Whether the officers serving the warrant failed to comply with A.R.S. § 13–3916 (the so-called "knock and announce" statute); and
(3) Whether the magistrate was shown good cause sufficient to justify a night-time search, as required by A.R.S. § 13–3917.

Because we have found reversible error as to the third issue, we need not address the first two issues raised.

A brief statement of the facts will suffice to present the factual backdrop of this case. The warrant for the search of appellant's residence near Flagstaff, Arizona, was issued on June 10, 1983. The warrant authorized a search of the premises during the night. The warrant was issued upon the affidavit of Sergeant Jack Judd of the Coconino County Sheriff's Department. The affidavit stated:

That the following facts establish probable cause for believing that grounds for the issuance of a search warrant for the aforementioned items exist:

On 6 May, 1983 your Affiant was contacted telephonically by his fellow officer, Detective Martin T. SMITH, Badge Number 1181, Phoenix Police Department. Detective SMITH advised your Affiant that he had received information from a confidential and reliable informant as follows. That within the previous several weeks Detective SMITH's informant had been to a residence located at 142 Nakai Trail, in Kachina Village Estates, near Flagstaff, Arizona. Further, that the above described residence was occupied by Marvin Charles RYPKEMA and Gwenn Marquerita JURCIN [RYPKEMA]. The informant further advised that RYPKEMA and JURCIN are actively involved in the transportation and distribution of narcotic drugs, namely cocaine. The informant further advised that during the above described visit, the informant personally observed a large quantity of cocaine, approximately several pounds, in the possession of Marvin RYPKEMA and Gwenn JURCIN at the residence.

On approximately 23 May, 1983 Detective SMITH telephoned your Affiant and advised that he had been contacted again by the same informant with information as follows; that Marvin RYPKEMA and Gwenn JURCIN had left Flagstaff, and were vacationing in Hawaii and South Dakota for several weeks and would return to Flagstaff at the end of their vacation.

Your Affiant and his fellow officers, Sergeant Tom HAMMARSTROM and Agent Robert PRIDA maintained a daily periodic surveillance at 142 Nakai Trial during the period between 23 May, 1983 and the present. Your Affiant and his fellow officers observed that the above residence was unoccupied during all that time and that the vehicle used by Marvin RYPKEMA and Gwenn JURCIN, a 1973 Saab, yellow in color, South Dakota plate number CAF–979 was not at the residence. On 9 May, 1983 investigation by your Affiant's fellow officer, Robert PRIDA revealed that the electric service at 142 Nakai Trial is listed in the name of Gwenn JURCIN.

.    .    .    .    .

Affiant believes that the following information demonstrates good cause, pursuant to A.R.S. § 13–3917 for permitting his warrant to be served at any time of the day or night:

On 10 June, 1983 your Affiant was again contacted telephonically by Detective SMITH with the following information. That the above described informant had contacted Detective SMITH and stated that the informant had spoken with an individual within the past several hours. This individual is a distributor of cocaine who obtains cocaine on a regular basis from Marvin RYPKEMA. The individual told Detective SMITH's informant that Marvin RYPKEMA and Gwenn JURCIN had returned to Phoenix, Arizona on or about 10 June, 1983 and that they are in possession of a large quantity of cocaine, and that they were planning to travel to Flagstaff with the cocaine and distribute a portion of the cocaine in Flagstaff.

At approximately 8:15 P.M. on 10 June, 1983 your Affiant's fellow officer, Robert PRIDA, went to the residence at 142 Nakai Trail and observed that the lights were on, and a vehicle which had been previously parked in the same location at the residence for two weeks without having been moved, had been moved to a different location at the residence, this

vehicle is described as a 1967 Chevrolet Station Wagon, Arizona license plate AZE–622.

Your Affiant has also learned from Detective SMITH that Marvin Charles RYPKEMA has previously been arrested in South Dakota on charges of Narcotics Possession and Sale. Detective SMITH received this information from officers of the Arizona Criminal Intelligence Agency.

Your Affiant believes that Detective SMITH's informant is reliable due to facts which are set forth in another portion of this Affidavit.

Further, your Affiant's fellow officer, Raoul OSEGUEDA, has conducted a surveillance at 142 Nakai Trail beginning at approximately 8:30 P.M. At approximately 9:50 hours Detective OSEGUEDA observed the yellow Saab, South Dakota license number CAF–979 registered to Gwenn JURCIN, arrive at 142 Nakai Trail, and the occupants of the vehicle enter the residence.

The warrant was executed about midnight on June 11, 1983. Approximately thirteen officers participated in the execution. The officers knew that the Rypkemas were in the house, although the lights were out and there was no noise. After knocking and waiting approximately 25 seconds, the police broke through the front and back doors. The Rypkemas were undressed, sleeping in bed, at the time. They then sat undressed on their bed for 15–30 minutes, after which they were moved to the living room. The house was extremely cold because the doors were open. After another 15–20 minutes, they were finally allowed to put something over themselves. Appellant's wife was pregnant and her pregnancy was "quite pronounced." Appellant's two sons by a previous marriage had been sleeping in the loft, from which they were able to view the proceedings. The officers then approached the Rypkemas and announced that they had found a brown paper bag and appellant and his wife were placed under arrest for possession of marijuana. The Rypkemas sat in

the living room for another hour to hour and one-half as the police searched further. The search included "tearing paneling off the walls...."

A.R.S. § 13–3917 provides:

Upon a showing of good cause therefor, the magistrate may, in his discretion, insert a direction in the warrant that it may be served at any time of the day or night. In the absence of such direction, the warrant may be served only in the daytime. For the purposes of this section night is defined as the period from ten p.m. to six-thirty a.m.

The state's first argument is that, although raised in the motion, "the issue [regarding § 13–3917] was not pursued at the corresponding hearing" and suggests that the "notion of waiver should attach." Our review of the record shows that appellant properly preserved the issue.

▮ As conceded by the state, the issue was raised in the motion to suppress. Moreover, contrary to the state's allegation that appellant did not pursue the issue at the suppression hearing, defense counsel asked Sergeant Judd what information contained in the affidavit supported a finding of good cause for a nighttime search. Judd admitted he could find nothing. The trial court's minute entry, although expressly addressing the first two issues raised in the motion to suppress and on appeal, did not address the § 13–3917 issue. The Rypkemas then took a special action to the Arizona Supreme Court, which alleged, in part:

This Court must take jurisdiction of this Petition for Special Action to correct the plain and obvious error by Respondent Judge Grace in upholding the authorization of said warrant. Evidence is absolutely uncontradicted that there was no cause for authorizing said warrant for said premises at nighttime....

The memorandum accompanying the special action petition further explained the facts and law supporting the above allegation. In the Rypkemas' reply to the state's response to the petition, they reiterated that the state "presented no evidence in justification for issuance of a nighttime search warrant...." Therefore, from the record, it is clear that appellant has not waived the nighttime search issue.

On the merits, the state argues that several factors were apparent justifying a night search. The specific factors cited are: (1) the urgency of the moment; (2) that drug sales at night are common; (3) that appellant was a known drug trafficker; and (4) that appellant had allegedly just brought back to the residence a large quantity of cocaine.

The primary Arizona case on this issue is *State v. Jackson,* 117 Ariz. 120, 571 P.2d 266 (1977). The court there noted the strong historical aversion to nighttime searches, and the long existence of Arizona statutes requiring that a search warrant be served in the daytime, absent a specific direction by the magistrate that it might be served at night. The court further noted that the Arizona statute in its present form was taken from the California statutes, and therefore decisions from that state are persuasive as to the construction of the statute. The court found sufficient cause for the nighttime search in "that the appellant and the co-defendants were selling marijuana during all times of the day and night from the residence to be searched." 117 Ariz. at 122, 571 P.2d at 268.

The most recent case addressing the issue is *State v. Eichorn,* 143 Ariz. 609, 694 P.2d 1223 (App.1984). There the officer's informant's affidavit stated that:

A surveillance conducted since the information was obtained has revealed suspected drug transactions by the listed persons [appellee and his brother] and is continuing.

143 Ariz. at 611, 694 P.2d at 1225. The other affidavit specifically stated as cause for the nighttime search that:

Affiant believes that the following information demonstrates good cause for permitting this warrant to be served between 10:00 p.m. and 6:30 a.m.:

A surveillance of the two (2) subjects listed [appellee and his brother] revealed

suspected drug transactions taking place in the parking lots of two (2) local bars, from the trunk of the Dodge Challenger, between 11:00 p.m. and 1:00 a.m.

The surveillance reveals, and your affiant's experience has shown, that drug transactions and use take place both day and night. In order to preserve evidence which might otherwise be sold or used, your affiant requests that a search warrant be issued for the nighttime hours.

143 Ariz. at 611, 612, 694 P.2d at 1225, 1226. This court, relying on *Jackson*, found the affidavits were sufficient to justify a nighttime search.

The present case is in stark contrast with *Jackson* and *Eichorn*. There is absolutely nothing in the officer's affidavit here to indicate why a nighttime search warrant should issue. There is no statement indicating previous nighttime drug sales or transfers. There is, in fact, no statement regarding any drug transfers from the house at any time of the day. Sergeant Judd candidly admitted at the suppression hearing that: "I don't see anything in here that fits in for the cause for the nighttime search."

The state's reliance on the nature of the contraband and the allegation that drug sales often occur at night are insufficient to support a nighttime search. The court in *Jackson* did note that in *Solis v. Superior Court*, 63 Cal.2d 774, 48 Cal.Rptr. 169, 408 P.2d 945 (1966), "the common sense knowledge that drug sales are likely at night was found to be good cause." 117 Ariz. at 122, 571 P.2d at 268. However, the *Jackson* court found "reasonable cause" in the officer's statements that sales were "occurring during all times of the day and night from the residence to be searched." 117 Ariz. at 122, 571 P.2d at 268. Further, we note that *Solis* appears to no longer be followed by the California appellate courts, although it has not been expressly overruled by the California Supreme Court. *See State v. Eichorn*.

In *People v. Watson*, 75 Cal.App.3d 592, 142 Cal.Rptr. 245 (1977), the court stated that justifying a nighttime search based on the nature of the contraband alone "would authorize a night service in any narcotic case where there has been prior narcotic activity in the place to be searched." 75 Cal.App.3d at 596, 142 Cal.Rptr. at 247. It reasoned:

> Because a night service of a warrant is a more serious invasion of the security of a home than a daytime service, the magistrate's exercise of discretion cannot be based solely on the nature of the contraband to be seized or the type of crime involved. Such a generalized rule would be repugnant to the Fourth Amendment requirement of particularity of reasons to justify the violation of the right to privacy.

75 Cal.App.3d at 597, 142 Cal.Rptr. at 247. The court held:

> We conclude that the proper standard for "good cause" as specified in Penal Code section 1553 is as follows: the affidavit furnished the magistrate must set forth specific facts which show a necessity for service of the warrant at night rather than between the hours of 7 a.m. and 10 p.m.[1] This means that the magistrate must be informed of facts from which it reasonably may be concluded that the contraband to be seized will not be in the place to be searched during the hours of 7 a.m. to 10 p.m.

75 Cal.App.3d at 599, 142 Cal.Rptr. at 248.

In our case, there was absolutely no indication in the officer's affidavit that the sought-after cocaine would not be on the premises from 6:30 a.m. to 10:00 p.m. In fact, the affidavit made no effort whatsoever, as testified to by the affiant, to set forth any reasons why the house should be searched at night. It does not indicate drug transfers observed at any time, much less during the night, nor any facts from which the magistrate could infer that there was a possibility of a violent confrontation during a daytime search. *See Tuttle v. Superior Court*, 120 Cal.App.3d 320, 174 Cal.Rptr. 576 (1981).

---

**1.** A.R.S. § 13–3917 defines nighttime as between 10:00 P.M. and 6:30 A.M.

In *State v. Wilson*, 25 Ariz.App. 49, 540 P.2d 1268 (1975), Division Two of this court reversed the trial court's denial of the motion to suppress where the officer's affidavit failed to satisfy the "good cause" requirement. The opinion does not set forth the officer's affidavit or the facts of the case, but it does hold that suppression of the fruit of the nighttime search is the proper remedy for a violation of § 13–3917 (formerly § 13–1447). *See also Tuttle v. Superior Court.*

The facts of this case show the invasion of privacy which may result because of a nighttime search. By enacting A.R.S. § 13–3917 (and its predecessors), our legislature has clearly expressed its concern about the "special threat to privacy presented by nighttime police intrusions." 120 Cal.App.3d at 331, 174 Cal.Rptr. at 582.

 In conclusion, the affidavit accompanying the requested warrant did not set forth "good cause" for a nighttime search and the trial court consequently erred both by authorizing nighttime service and by denying the subsequent motion to suppress. The judgment is reversed, with directions for the trial court to grant appellant's motion to suppress items seized pursuant to the search warrant executed on June 11, 1983.

CORCORAN and OGG, JJ., concur.