IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

STATE OF ARIZONA, *Appellee,*

*v.*

KENRICK FONCETTE, *Appellant.*

No. 1 CA-CR 14-0030
FILED 8-11-2015

Appeal from the Superior Court in Maricopa County
No. CR2012-008318-002
The Honorable Teresa A. Sanders, Judge

**AFFIRMED**

COUNSEL

Arizona Attorney General's Office, Phoenix
By David Simpson
*Counsel for Appellee*

Blumberg & Associates, Phoenix
By Bruce E. Blumberg
*Counsel for Appellant*

**OPINION**

Presiding Judge Kent E. Cattani delivered the opinion of the Court, in which Judge Lawrence F. Winthrop and Judge Peter B. Swann joined.

C A T T A N I, Judge:

¶1　　　　Kenrick Foncette appeals from his convictions of possession of marijuana for sale and possession of drug paraphernalia and the resulting sentences. Foncette argues the superior court erred by denying his motions to suppress evidence discovered in his hotel room after what he argues were illegal searches. Specifically, he claims police officers violated his Fourth Amendment rights by using a drug-detection dog in the hallway outside his hotel room and by manufacturing an exigency to justify their subsequent warrantless entry into the hotel room. We conclude that he has not shown a Fourth Amendment violation.

¶2　　　　Foncette further asserts that, although the officers obtained a search warrant after securing the room, the warrant impermissibly authorized a late-night search without good cause in violation of Arizona's statutory restriction on nighttime searches, Arizona Revised Statutes ("A.R.S.") § 13-3917.[1] Absent a constitutional violation, however, suppression is not an authorized remedy for a purely statutory violation of the nighttime search statute, *see* A.R.S. § 13-3925(A), and ample cause supported nighttime service of the warrant in any event. For these reasons, we affirm.

### FACTS AND PROCEDURAL BACKGROUND

¶3　　　　One night in late October 2010, Foncette and another man were driving a rental car in Tempe. Around 11:30 p.m., Officer Shearan of the Tempe Police Department stopped the car for a traffic violation. During the stop, Officer Shearan smelled fresh marijuana emanating from the car and requested the assistance of a drug-detection dog.

¶4　　　　Officer Ribotta and his police dog arrived at the traffic stop, and the dog alerted to the exterior of the vehicle, then to the seam of the

---

[1]　　Absent material revisions after the relevant date, we cite a statute's current version.

backseat leading to the trunk, and then to the trunk. The officers searched the car, but did not find marijuana. They did, however, smell an overwhelming odor of fresh marijuana coming from the trunk.

¶5         After the stop, Foncette and his companion were allowed to leave, and Officer Manchak, driving an unmarked vehicle, followed them to a hotel. Hotel staff buzzed the officers into the lobby, where Officer Manchak confirmed Foncette's room number with the front desk clerk. Officer Ribotta (without being informed of Foncette's room number) walked down a hallway with his dog, and the dog alerted to Foncette's room.

¶6         Officer Shearan knocked on the hotel room door several times. Less than one minute after the first knock, Foncette opened the door slightly, then, at the officers' request, fully opened it. Officers Shearan and Manchak smelled an odor of fresh marijuana as soon as Foncette opened the door.

¶7         In light of the dog's alert and the odor of marijuana, the officers asked Foncette and his companion to step out of the room. Foncette left the room, but his companion, who was lying on the bed, did not respond. Officer Shearan and other officers entered the room to remove Foncette's companion; they all left as soon as Officer Shearan walked him out of the room.

¶8         Foncette and his companion were detained in the hallway and spoke briefly with the officers. The officers obtained a warrant for a nighttime search of the hotel room, and they subsequently found plastic wrap and foam sealant (often used to package marijuana) together with over 20 pounds of marijuana. Foncette was arrested and charged with possession of marijuana for sale and possession of drug paraphernalia.

¶9         Before trial, Foncette filed two motions to suppress the evidence discovered in the hotel room. In the first motion, he argued that the use of the police dog to investigate by sniffing in the hotel hallway was an unreasonable search under the Fourth Amendment, and that the late-night search pursuant to the warrant violated Arizona's statutory restriction on nighttime searches. In the second motion, Foncette asserted — among other claims — that the officers' warrantless entry into the room to

remove his companion violated the Fourth Amendment. As relevant here, the superior court denied the motions.[2]

¶10 A jury found Foncette guilty as charged, and he timely appealed after sentencing. We have jurisdiction under Article 6, Section 9, of the Arizona Constitution and A.R.S. § 13-4033.

## DISCUSSION

¶11 We review the superior court's denial of a motion to suppress for an abuse of discretion. *State v. Davolt*, 207 Ariz. 191, 202, ¶ 21, 84 P.3d 456, 467 (2004). We consider only the evidence presented at the suppression hearing and view this evidence in the light most favorable to sustaining the ruling. *State v. Jacot*, 235 Ariz. 224, 227, ¶ 9, 330 P.3d 981, 984 (App. 2014). We defer to the superior court's factual findings but review de novo issues of law, including the court's ultimate legal determination that the search complied with the Fourth Amendment. *Davolt*, 207 Ariz. at 202, ¶ 21, 84 P.3d at 467; *Jacot*, 235 Ariz. at 227, ¶ 9, 330 P.3d at 984; *State v. Blakley*, 226 Ariz. 25, 27, ¶ 5, 243 P.3d 628, 630 (App. 2010).

## I. Investigation Using a Drug-Detection Dog.

¶12 The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. A search occurs when law enforcement officers acquire information by physically intruding into constitutionally protected areas without license to do so. *Florida v. Jardines*, 133 S. Ct. 1409, 1414 (2013). The government's invasion of an individual's reasonable expectation of privacy also constitutes a search under the Fourth Amendment. *United States v. Jacobsen*, 466 U.S. 109, 113 (1984); *Katz v. United States*, 389 U.S. 347, 361 (1967) (Harlan, J., concurring).

¶13 Foncette first argues that the use of the police dog to sniff for drugs in the hotel hallway was an unreasonable search under the Fourth Amendment. He claims both that he had a reasonable expectation of privacy in the hallway outside his room and that the dog's sniff impermissibly detected private information from inside the room.

---

[2] In the second motion, Foncette also sought suppression of statements he made to police while detained in the hallway, alleging untimely warnings under *Miranda v. Arizona*, 384 U.S. 436 (1966). The superior court granted that portion of the motion.

¶14 Foncette relies on *Jardines*, in which the United States Supreme Court held that police officers conducted an improper search by entering onto the curtilage of a home with a drug-sniffing dog and having the dog sniff the porch area. 133 S. Ct. at 1417–18. Critical to the majority decision in *Jardines* was the officers' physical intrusion onto a constitutionally protected area (the curtilage of a home) without an express or implied license to enter the area for their specific purpose (a drug-sniff by a police dog). *Id.* at 1415–16.

¶15 Here, however, the officers did not impermissibly cross into a constitutionally protected area to investigate with the dog. Although hotel guests are entitled to constitutional protection against unreasonable searches and seizures that infringe on their expectation of privacy within the room, *see Davolt*, 207 Ariz. at 202, ¶¶ 23–24, 84 P.3d at 467, the hallway outside Foncette's hotel room was not a private area. Instead it was a public access area within the hotel, open (even overnight) to hotel staff and management as well as other hotel guests. *See, e.g.*, *State v. Kosman*, 181 Ariz. 487, 490, 892 P.2d 207, 210 (App. 1995) ("Defendant had no reasonable expectation of privacy in the area outside his door [in an apartment complex] because the area is a public place where anyone, including the police, had a right to be."). Although close in proximity to a private area, the public access hallway outside the door was not the type of area "to which the activity of home life extends" so as to qualify as curtilage of the hotel room. *Oliver v. United States*, 466 U.S. 170, 182 n.12 (1984); *see also United States v. Dunn*, 480 U.S. 294, 300–01 (1987) (stating that the extent of a home's curtilage is determined by assessing "the proximity of the area claimed to be curtilage to the home, whether the area is included within an enclosure surrounding the home, the nature of the uses to which the area is put, and the steps taken by the resident to protect the area from observation by people passing by").

¶16 Moreover, hotel personnel in this case permitted the officers and the drug dog to enter the hallway, even though it was nighttime. This authorization from hotel management—who had the right to control access to the hallway—provided any required license for the officers to enter the hallway. *Compare Jardines*, 133 S. Ct. at 1416 ("But introducing a trained police dog to explore the area around the home in hopes of discovering incriminating evidence is something else. There is no customary invitation to do *that*.").[3] Under *Jardines*, law enforcement officers may not use a dog

---

[3] Foncette also references the Arizona Constitution's protection of privacy in temporary residences and suggests that a hotel room should be

to sniff for drugs without license to do so when that investigation is conducted from within a constitutionally protected area. 133 S. Ct. at 1415–18. Here, however, the officers were legally present in the hallway from which the dog sniffed for drugs, and Foncette accordingly is not entitled to relief on this basis.

¶17      Foncette also claims that the officers' use of the dog to sniff for drugs invaded his reasonable expectation of privacy within the room because the sniff detected information about items inside the private area. But "any interest in possessing contraband cannot be deemed 'legitimate,'" and thus state actions that reveal only contraband do not compromise any privacy interest that society accepts as reasonable. *Illinois v. Caballes*, 543 U.S. 405, 408 (2005). And, under Supreme Court precedent, using a well-trained drug-detection dog to sniff for drugs "discloses only the presence or absence of narcotics, a contraband item," and thus generally does not constitute an improper search. *United States v. Place*, 462 U.S. 696, 707 (1983); *Caballes*, 543 U.S. at 409; *see also, e.g.*, *United States v. Reed*, 141 F.3d 644, 650 (6th Cir. 1998); *United States v. Roby*, 122 F.3d 1120, 1125 (8th Cir. 1997); *United States v. Vasquez*, 909 F.2d 235, 238 (7th Cir. 1990); *United States v. Colyer*, 878 F.2d 469, 477 (D.C. Cir. 1989). *But see United States v. Thomas*, 757 F.2d 1359, 1366–67 (2d Cir. 1985) (concluding that a dog sniff at the door of an apartment constituted a search because it detected the contents of a private, enclosed space subject to the heightened expectation of privacy within a dwelling). Accordingly, Foncette has not established a Fourth Amendment violation.

## II.    Initial Warrantless Entry.

¶18      Foncette next challenges the officers' warrantless entry into the hotel room. Specifically, he claims that the police created the risk of destruction of evidence that the State cites to justify entry without a warrant.

¶19      A search conducted without a warrant is presumptively unreasonable under the Fourth Amendment. *Kentucky v. King*, 131 S. Ct. 1849, 1856 (2011); *Katz*, 389 U.S. at 357. Nevertheless, because the cornerstone of Fourth Amendment protection is "reasonableness," there are certain exceptions to the warrant requirement. *King*, 131 S. Ct. at 1856. One

---

considered equivalent to a home. But Foncette fails to develop any specific argument justifying this position under state law or to address the cases that distinguish hotels from homes with regard to, for instance, the extent of the surrounding curtilage area.

such exception applies in the case of exigent circumstances, including an exigent "need 'to prevent the imminent destruction of evidence.'" *Id.* (citation omitted). Preventing destruction of evidence does not, however, justify warrantless entry if the police themselves created the exigency "by engaging or threatening to engage in conduct that violates the Fourth Amendment." *Id.* at 1858.

¶20　　　　Here, the officers' conduct comported with the Fourth Amendment. As noted above, the officers were lawfully present in the hallway with the authorization of hotel management. *See supra* ¶ 15. From there, they could reasonably seek a consent-based encounter by knocking on the hotel room door. *See King*, 131 S. Ct. at 1858; *see also Jardines*, 133 S. Ct. at 1416 ("[A] police officer not armed with a warrant may approach a home and knock, precisely because that is 'no more than any private citizen might do.'") (citation omitted). Although the officers knocked on Foncette's door sometime after midnight, the late-night knock was not unreasonable given the traffic stop a short time earlier, and Foncette in fact answered the door less than one minute after the officers first knocked.

¶21　　　　Once Foncette opened the door in response to the officers' knock, the officers immediately smelled fresh marijuana. At that point, it was not unreasonable to ask Foncette and his companion to leave the room to preserve the status quo while waiting for a warrant, nor was it unreasonable to make a limited entry to remove the companion—without opening containers or otherwise searching for evidence—when the companion refused to leave the room.

¶22　　　　Foncette alleges that before knocking, the police had improperly decided to enter the room. But the touchstone of the analysis is the objective reasonableness of the officers' conduct, not their alleged subjective intent or whether they could have proceeded differently. *See King*, 131 S. Ct. at 1859 ("Our cases have repeatedly rejected a subjective approach, asking only whether the circumstances, viewed objectively, justify the action.") (citations and internal quotation marks omitted); *see also id.* at 1859–60 (rejecting a test that would invalidate an exigency if it was reasonably foreseeable the conduct would create the exigency); *id.* at 1860–61 (rejecting a rule that would "fault law enforcement officers if, after acquiring evidence that is sufficient to establish probable cause to search particular premises, the officers do not seek a warrant but instead knock on the door and seek either to speak with an occupant or to obtain consent to search"). Here, the officers briefly entered the hotel room pursuant to a valid exigent circumstance, and the superior court did not err by denying Foncette's motion to suppress on this ground.

## III.     Nighttime Search.

**¶23**        Finally, Foncette argues that the evidence obtained from the search pursuant to the warrant should have been suppressed because the warrant improperly authorized a late-night search without good cause in violation of Arizona's statutory restriction on nighttime searches.   We review a finding of good cause for a nighttime search for an abuse of discretion.  *State v. Adamson*, 136 Ariz. 250, 259, 665 P.2d 972, 981 (1983).

**¶24**        Under A.R.S. § 13-3917, search warrants generally may not be served overnight—between 10:00 p.m. and 6:30 a.m.—unless the magistrate allows nighttime service on a showing of good cause.  Good cause exists if the reasons given in support of a nighttime search comport with common sense and "as a whole reasonably support[] the inference that the interests of justice are best served by the authorization of nighttime service."  *State v. Jackson*, 117 Ariz. 120, 122, 571 P.2d 266, 268 (1977) (citation omitted).

**¶25**        Absent a constitutional violation, Arizona law does not contemplate suppression of evidence to remedy a violation of the nighttime search statute.  A.R.S. § 13-3925(A) ("Any evidence that is seized pursuant to a search warrant shall not be suppressed as a result of a violation of this chapter except as required by the United States Constitution and the constitution of this state.").   Here, Foncette alleges only a statutory violation, and we have found no constitutional violation, so his request for relief on this basis is unavailing.

**¶26**        Moreover, the circumstances existing when the warrant issued provided ample cause for a nighttime search.  Foncette relies on *State v. Rypkema*, in which the state sought to justify a nighttime warrant on the basis that the target was a drug trafficker who had allegedly just received a large quantity of cocaine, and that drug sales often occur at night.  144 Ariz. 585, 588, 698 P.2d 1304, 1307 (App. 1985).  This court held that good cause for a nighttime search could not be based solely on the nature of the contraband (drugs) and the generic allegation that drug sales often occur at night, without any indication that the trafficker was aware of police presence, much less that the contraband would actually be transferred or destroyed under the circumstances presented.  *Id.* at 589, 698 P.2d at 1309.

**¶27**        Here, in contrast, Foncette and his companion were alerted to the police presence at least by the time Foncette opened the door after the knock, and their awareness that the police were at their door raised a concrete risk that the drugs might be destroyed, as distinct from the inchoate risk alleged in *Rypkema*.  *See, e.g.*, *King*, 131 S. Ct. at 1857 ("[I]n the

vast majority of cases in which evidence is destroyed by persons who are engaged in illegal conduct, the reason for the destruction is fear that the evidence will fall into the hands of law enforcement."). Under the circumstances, the superior court did not err by finding good cause for the nighttime search.

**CONCLUSION**

¶28        Foncette's convictions and sentences are affirmed.



Ruth A. Willingham · Clerk of the Court
FILED: RT