744 P.2d 429

**STATE of Arizona, Appellant,**

v.

**Robert John BRITA, Appellee.**

No. 1 CA–CR 9670.

Court of Appeals of Arizona, Division 1, Department A.

Feb. 5, 1987.

Review Granted May 13, 1987.

Thomas E. Collins, Maricopa Co. Atty. by H. Allen Gerhardt, Deputy Co. Atty., Phoenix, for appellant.

Richard R. Brennan, Scottsdale, for appellee.

OPINION

FROEB, Chief Judge.

Defendant, Robert John Brita, was charged with two counts of manslaughter and two counts of aggravated assault arising out of an automobile collision. Prior to his arrest, defendant was taken to a hospital, where a blood sample was drawn at a police officer's request for the purpose of testing blood alcohol content. This appeal is from the trial court's order granting defendant's motion to suppress the results of the blood alcohol test. We reverse on the basis of A.R.S. § 13–3925(A), which creates a good faith exception to the rule excluding evidence unlawfully obtained, and in doing so discuss the decision of the Arizona Supreme Court in *State v. Cocio,* 147 Ariz. 277, 709 P.2d 1336 (1985).

When a driver is suspected of operating a vehicle while under the influence of intoxicating liquor, there are two instances when a blood sample is clearly permissible for law enforcement purposes in Arizona. One instance is after arrest of the suspect and the sample is given with consent in a medical facility. This is in accordance with A.R.S. § 28–691, commonly referred to as the implied consent law. The other instance is when a blood sample has been drawn from a suspect in a medical facility for medical purposes and a law enforcement officer requests a portion of it for police testing. The latter is provided for in

A.R.S. § 28–692(M), a relatively new provision added in 1982.

We discuss these more fully later, yet it should be noted neither is involved in this case. The factual situation here falls short of the implied consent statute because there was no arrest of defendant. It also falls short of the medical purpose statute since the sample was not drawn for medical purposes. Were it not for the effect of these statutes, a sample of blood could be involuntarily drawn from a suspect driver in a medical facility based upon probable cause. *Schmerber v. California*, 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966); *State v. Cocio*. Those are the facts of this case. The question here is whether Arizona's implied consent law and the medical purpose exception in A.R.S. § 28–692(M) have the effect of preempting that kind of seizure. We read *Cocio* to say that they do.

### FACTS

On February 20, 1985, defendant lost control of his motor vehicle. The vehicle crossed both southbound lanes of Price Road in the City of Tempe and entered a northbound lane where it struck another vehicle head-on. Two victims were killed and two other victims were seriously injured.

Defendant was taken to Desert Samaritan Hospital for medical treatment. Later, a police officer contacted defendant at the hospital. Defendant told the police officer that he had consumed two beers at a friend's house in Phoenix prior to the collision. During the conversation with defendant, the officer detected a strong odor of alcohol on defendant's breath and noticed that defendant's eyes were bloodshot. The police officer determined that he had probable cause to believe that defendant had been driving while intoxicated. The trial court found that the facts supported a finding of probable cause. Although he was not placed under arrest, defendant was taken to the hospital for medical treatment. While there, the police officer asked defendant to sign a consent form that is used when invoking the implied consent law.

Defendant signed the form believing he would lose his driver's license if he did not, and the blood sample was taken by medical personnel. Earlier, a sample of blood had been drawn in the hospital for medical reasons, but the officer was unaware of it. That sample is not involved in this case and never became available to police. The sample which was drawn at police request was taken under the impression the implied consent statute had been properly invoked.

Defendant was charged with two counts of manslaughter and two counts of aggravated assault and thereafter moved to suppress the results of the blood alcohol test to prevent their introduction into evidence. On November 13, 1985, the superior court granted the motion relying upon *State v. Waicelunas*, 138 Ariz. 16, 672 P.2d 968 (App.1983), in which this court held that an arrest was required prior to the taking of a blood sample. The trial court in the present case found that defendant was not under arrest at the time the blood sample was taken and, therefore, granted defendant's motion to suppress the blood test results. The trial court rejected the state's argument that under *State v. Salazar*, 146 Ariz. 547, 707 P.2d 951 (App.1985), a Division Two case, an arrest was not required before the state could legally seize a blood sample from a suspect.

Within two weeks after the trial court granted the motion to suppress, the state filed a motion for reconsideration. The motion was based on the decision of the Arizona Supreme Court in *State v. Cocio*, which was decided a few days before the motion to suppress had been granted, and which had not been called to the attention of the trial court. The state argued that in *Cocio* the supreme court decided that *Schmerber* did not require an arrest but that only probable cause and exigent circumstances were required before a blood sample could be seized. The trial court denied the motion for reconsideration, and dismissed the case without prejudice on the state's motion. This appeal by the state followed.

## LEGAL BACKGROUND

To best understand the conflicting arguments presented by this case, it is helpful to elaborate upon the statutes and case law involved.

A suspect's blood sample may be taken with his consent in accordance with the implied consent statute, A.R.S. § 28–691, which states in part:

A. Any person who operates a motor vehicle within this state gives consent, subject to the provisions of § 28–692, to a test or tests of his blood, breath, or urine for the purpose of determining the alcoholic content of his blood *if arrested for any offense arising out of acts alleged to have been committed while the person was driving or in actual physical control of a motor vehicle while under the influence of intoxicating liquor.* The test or tests chosen by the law enforcement agency shall be administered at the direction of a law enforcement officer having reasonable grounds to believe the person to have been driving or in actual physical control of a motor vehicle within this state while under the influence of intoxicating liquor.

B. *Following an arrest* a violator shall be requested to submit to any test prescribed by subsection A of this section, and if the violator refuses he shall be informed that his license or permit to drive will be suspended or denied if he refuses to submit to the test.

\*      \*      \*      \*      \*      \*

D. If a person *under arrest* refuses to submit to a test designated by the law enforcement agency as provided in subsection A of this section, *none shall be given except pursuant to § 28–692, subsection M.* The department, ... shall suspend for a period of twelve months his license or permit to drive, or any nonresident operating privilege ...

[Emphasis added.]

Another relevant statute is A.R.S. § 28–692, which sets forth the requirements for finding a person under the influence of intoxicating liquor while driving. Paragraph M of that statute, added in 1982, states:

M. Notwithstanding any provision of law to the contrary if a law enforcement officer has probable cause to believe that a person has violated this section and a blood sample is taken from that person for any reason a portion of that sample shall be provided to a law enforcement officer if requested for law enforcement purposes. A person who fails to comply with this subsection is guilty of a class 1 misdemeanor.

It is evident that by its terms the implied consent statute, A.R.S. § 28–691, requires an arrest before it can be applied to a suspect driver. Each of the subsections that refer to the testing of blood, breath, or urine indicate that the person must be under arrest. Subsection A specifically states that the arrest must arise "out of acts alleged to have been committed while the person was driving or in actual physical control of a motor vehicle while under the influence of intoxicating liquor." Thus, defendant must be placed under arrest for an offense before the police may seek a blood sample under Arizona's implied consent statute.

Additionally, A.R.S. § 28–691(D) provides that if an arrested person refuses a chemical test, none shall be taken "except pursuant to § 28–692, subsection M." Unlike the implied consent statute, subsection M of A.R.S. § 28–692 authorizes seizure of a part of a blood sample already drawn by the hospital if there is probable cause. It does not require an arrest. The language in A.R.S. § 28–692(M), "[n]otwithstanding any provision of law to the contrary," indicates that the provision may be used as an alternative means of lawfully obtaining a blood sample. *See State v. Cocio; State v. Salazar.*

In *State v. ' Cocio,* the defendant was taken to a hospital following an automobile collision. The police officer had probable cause to believe the defendant had been driving while intoxicated. The officer indicated that if a sample of blood was taken for medical purposes by the hospital, he wanted a portion of it for law enforcement purposes. In seeking to suppress this evidence, the defendant argued that under

*State v. Waicelunas,* an arrest was required before the police could take a blood sample.

We turn briefly to *Waicelunas,* which was decided by this court prior to the enactment of A.R.S. § 28–692(M). *Waicelunas* based its decision on *United States v. Harvey,* 701 F.2d 800 (9th Cir.1983), which interpreted *Schmerber* to require an arrest. The U.S. Court of Appeals (9th Circuit) held in *Harvey* that an arrest was required for a seizure of blood because it would clearly delineate the time when the police had probable cause.

Returning to *Cocio,* the Arizona Supreme Court rejected the reasoning in *Harvey* and *Waicelunas* and held that the police are not required to arrest a suspect in order to obtain a blood sample under subsection M of A.R.S. § 28–692. The court made it clear, however, that this section of the statute is available to police only where a blood sample has been initially drawn for medical purposes.

### THE PRESENT CASE

■ The focus of this case is whether an involuntary sample of blood may be seized from a suspect without an arrest.

Absent an arrest prior to the request for a blood sample, the provisions of the implied consent statute, A.R.S. § 28–691, have not been invoked. Moreover, the medical sample exception in A.R.S. § 28–692(M) is inapplicable because the blood withdrawn at police request was not a portion of a blood sample taken for medical purposes. Since neither of these statutory provisions permit the blood to have been drawn in this case, we are left with the question of whether the blood sample could nevertheless be lawfully seized and could have been used as evidence.

The state argued in the trial court that in addition to the consensual giving of a blood sample *after* arrest under the implied consent statute, a sample may be lawfully seized for police purposes *before* an arrest under *Schmerber.* The defendant argued that the legislature intended to limit a pre-arrest blood seizure to the hospital sample envisaged by A.R.S. § 28–692(M), and as a result, A.R.S. §§ 28–691 and 28–692(M) are the only methods in Arizona to lawfully obtain a blood sample from one suspected of driving while intoxicated. The supreme court decision in *Cocio* touches upon this issue and indicates that the defendant is correct under Arizona law.

*Cocio* is concerned with the constitutionality of A.R.S. § 28–692(M) and holds that the statute is valid. By way of interpreting *Schmerber,* the court addressed itself to *Waicelunas* which held a seizure of blood without an arrest was unlawful. *Cocio* noted that *Waicelunas* arose prior to the effective date of A.R.S. § 28–692(M) and that *Waicelunas* had relied heavily on the *Harvey* case. Then the court held:

> Both *Waicelunas* and *Harvey* are based on an interpretation of *Schmerber v. California* (citation omitted), which is thought to require an arrest prior to the seizure of a blood sample. Although this position has been followed by a number of courts, see cases cited in 2 W. LaFave, *Search and Seizure* § 5.4(b) n. 18 (1978), we decline to follow this interpretation and hold that a formal arrest of a defendant is not a constitutional prerequisite to the obtaining of a blood sample pursuant to A.R.S. § 28–692(M). *See* 2 W. LaFave, *supra* at n. 19; *People v. Sutherland,* 683 P.2d 1192 (Colo.1984).

*Cocio,* 147 Ariz. at 285, 709 P.2d at 1344.

The decision in *Cocio* further held that for A.R.S. § 28–692(M) to be constitutional under *Schmerber* and *Cupp v. Murphy,* 412 U.S. 291, 93 S.Ct. 2000, 36 L.Ed.2d 900 (1973), three conditions must be met:

> 1) [P]robable cause exists to believe the person has violated A.R.S. § 28–692(A) or (B), 2) exigent circumstances are present and, 3) the blood is drawn for medical purposes by medical personnel. It is our intention to restrict the language in A.R.S. § 28–692(M), '... taken from that person for any reason ...' to mean that the blood must be drawn by medical personnel for any medical reason so as not to conflict with the orderly administration of care to those injured. *Under any other circumstances the provisions of A.R.S. § 28–691 apply.*

This case differs factually from *Waicelunas* in that blood was drawn for medical purposes in the instant case while the blood sample in *Waicelunas* was drawn only for police purposes. Also, the police in the instant case were operating under authority of A.R.S. § 28–692(M) which was not available in the previous case.
*Cocio*, 147 Ariz. at 286, 709 P.2d at 1345 (emphasis added).

Although *Cocio* adopted the interpretation of *Schmerber* allowing seizure of a blood sample based upon probable cause, nevertheless the court limited the language of A.R.S. § 28–692(M) to blood samples taken initially for medical purposes. The statement, "[u]nder any other circumstances the provisions of A.R.S. § 28–691 apply," leads us to the conclusion that the Arizona Supreme Court views A.R.S. §§ 28–691 and 28–692(M) as providing the only circumstances in which a blood sample may be seized from a person suspected of driving while intoxicated.[1]

In the present case, defendant was not arrested and therefore, his blood was not obtained in accordance with the implied consent statute, A.R.S. § 28–691. Furthermore, defendant's blood was not part of a sample taken for medical reasons in accordance with A.R.S. § 28–692(M). Keeping in mind the decision of the supreme court in *Cocio*, it appears that the legislature intended A.R.S. § 28–691 and § 28–692(M) to preclude a seizure of a blood sample obtained outside of the authority of these two statutes. Therefore, the trial court correctly interpreted the statutes and applied *Cocio* when it suppressed the evidence.

### THE GOOD FAITH EXCEPTION TO THE SUPPRESSION OF EVIDENCE

■ Assuming the blood sample to have been obtained in violation of Arizona stat-utes, the rule that it should be excluded from evidence was applied by the trial court and the evidence was suppressed. The state argues that A.R.S. § 13–3925(A), the good faith exception to the rule excluding evidence unlawfully obtained, should apply. The state contends that the officers in this case made a good faith mistake in believing that defendant's written consent for the blood sample would be lawful without an arrest of defendant. As we pointed out earlier, except for the fact that defendant was not arrested, the written consent given by defendant would be valid.

The "good faith" exception to the suppression of evidence obtained unlawfully is set forth in A.R.S. § 13–3925(A) and provides in part as follows:

> If a party in a criminal proceeding seeks to exclude evidence from the trier of fact because of the conduct of a peace officer in obtaining the evidence, the proponent of the evidence may urge that the peace officer's conduct was taken in a reasonable, good faith belief that the conduct was proper and that the evidence discovered should not be kept from the trier of fact if otherwise admissible.

It should be pointed out that the drawing of the blood sample in this case without a warrant does not violate the fourth amendment of the U.S. Constitution because it was based upon probable cause and exigent circumstances. *Schmerber v. California; State v. Cocio.* The violation, if any, was a violation of the implied consent law, an Arizona statutory provision. Therefore, we are not concerned in this case with whether the good faith exception to the rule of exclusion should apply in the face of the violation of a constitutional right. The question is whether the statutory good

---

1. The specific language of Arizona's implied consent statute necessarily includes offenses under Title 13, such as negligent homicide or manslaughter. A.R.S. § 28–691(A) pertains to "[A]ny offense arising out of acts alleged to have been committed while the person was driving or in actual physical control of a motor vehicle while under the influence of intoxicating liquor." However, other states have amended their statutes to make it clear that the implied consent statute applies only in DWI cases, and not in vehicular homicide cases. *See* Alaska Stat. § 28.35.035 (1985); Or.Rev.Stat. § 487.820 (1983). In those states and others, the police may take a blood or breath sample without the suspect's consent when the officer has probable cause to believe the suspect has been driving while intoxicated and a homicide or serious injury has occurred. *See also* Annot., 14 A.L. R.4th 690, at § 6[a] (1982 & Supp.1986).

faith exception should apply to relieve the rule of exclusion imposed because of the violation of the Arizona statute.[2]

The defendant contends that the officers in this case were not acting in good faith for two reasons. He states that after the blood sample was drawn, the officers involved in the investigation became aware that defendant had not been placed under arrest and did nothing about it. We reject this as not relevant to the present consideration. The defendant also states that the officers made changes in their final written reports of the accident to make it appear that the defendant had in fact been arrested prior to the taking of the blood sample. While there was some evidence which could support this and some conflicting evidence, we need not further consider it because it is irrelevant to the application of the good faith exception in this case. The question before us is whether the mistaken conduct of the police *prior* to the taking of the blood sample was in good faith so as to excuse the violation of statute. What occurred *after* the blood sample was obtained is a different question which could, if true, involve disciplinary measures against the officers, but does not cloud the otherwise good faith police mistake leading to the obtaining of the blood sample. As for police conduct prior to the taking of the blood sample, there is no suggestion that the officer who dealt with appellant in the hospital did anything other than act in good faith in seeking a blood sample under the statute.

In our opinion, A.R.S. § 13-3925(A) is intended to apply to this specific situation and directs that the evidence, if otherwise admissible, should not be kept from the trier of fact where it was obtained in good faith.

Finally, we are mindful of the well settled rule that the ruling of the trial court on a motion to suppress will not be disturbed on appeal absent clear and manifest error. *State v. Smith*, 123 Ariz. 231, 599 P.2d 187 (1979). The rule, however, is not applicable here because the good faith exception to the rule of exclusion was not

urged by the state in the trial court and was raised for the first time on appeal. Ordinarily we would not consider an issue raised for the first time on appeal, but appellant has not objected to our consideration of it and has argued against it on the merits. We have addressed the merits and found that the position of the state is well taken on the issue.

CONCLUSION

Following the automobile accident, appellant was taken to a hospital where a sample of his blood was drawn by hospital personnel at the request of the police. We have agreed with the ruling made by the trial court that the blood sample was illegally taken because appellant was not under arrest, as required by the Arizona implied consent law and *State v. Cocio.* However, the order suppressing this evidence is reversed based upon the good faith exception to the rule of exclusion found in A.R.S. § 13-3925(A).

Order of suppression vacated.

EUBANK and JACOBSON, JJ., concur.

---

**2.** We have assumed, as did the trial court, that a violation by police officers of A.R.S. § 28-691 would give rise to exclusion of evidence thereby obtained, just as would a violation of a constitutional right under the fourth amendment. The state does not argue otherwise in this case.