BREARCLIFFE, Judge:
¶ 1 Angel Soza petitions for special action relief from the respondent judge's order reversing a Tucson City Court judge's order suppressing breath-test evidence obtained incident to his lawful arrest for driving under the influence (DUI). This case presents a legal question of statewide significance, see State v. Superior Court , 198 Ariz. 109, ¶ 2, 7 P.3d 118 (App. 2000), and of first impression, see *1267 State ex rel. Romley v. Martin , 203 Ariz. 46, ¶ 4, 49 P.3d 1142 (App. 2002) : whether the exclusionary rule is a remedy for the warrantless taking of a breath test incident to a lawful arrest but in violation of A.R.S. § 28-1321. We therefore accept special action jurisdiction. But, because we conclude the respondent judge properly reversed the city court ruling, we deny relief.
Factual and Procedural History
¶ 2 In August 2015, Soza was arrested for driving while impaired to the slightest degree and driving while having a blood alcohol concentration in excess of .08. See A.R.S. §§ 28-1381(A)(1), (2). After his arrest, he was given an administrative admonition like that rejected by our supreme court in State v. Valenzuela , 239 Ariz. 299, 371 P.3d 627 (2016), including the language, "Arizona law requires you to submit to and successfully complete tests of breath, blood or other bodily substance ... to determine alcohol concentration or drug content." Id. ¶ 5. He then submitted to a breath test.
¶ 3 Soza filed a motion to suppress in Tucson City Court, arguing his breath test was subject to the Fourth Amendment, because, under Valenzuela , the admonition was coercive, and Birchfield v. North Dakota , --- U.S. ----, 136 S.Ct. 2160, 195 L.Ed.2d 560 (2016) did not apply. Birchfield , which held that the Fourth Amendment permitted warrantless breath tests as a search incident to arrest, was inapplicable, he argued, because Arizona "has long accorded 'implied consent' breath tests protection under traditional Fourth Amendment analysis." The state responded that breath tests are lawful searches when incident to arrest under Birchfield and State v. Navarro , 241 Ariz. 19, 382 P.3d 1234 (App. 2016). It asserted that Soza's consent had been voluntary under the totality of the circumstances, but, even if involuntary, the exclusionary rule did not apply because of the officer's good faith belief that the admonition was proper. Finally, it argued that suppression was unwarranted under the implied consent statute, even assuming a violation of § 28-1321.
¶ 4 The city court granted Soza's motion to suppress, concluding the admonition violated § 28-1321 and rendered his consent involuntary. The court determined the good-faith exception to the exclusionary rule did not apply because, after our supreme court's decision in State v. Butler , 232 Ariz. 84, 302 P.3d 609 (2013), no binding precedent supported giving the admonition. The state appealed to the superior court, arguing the city court had erred by concluding § 28-1321 had been violated, by failing to apply the good-faith exception to the exclusionary rule, and by finding that the search-incident-to-arrest exception does not apply to breath tests taken in violation of § 28-1321. It also argued that "whether exclusion is an appropriate remedy for violation of" § 28-1321 must be addressed separately from Fourth Amendment exclusion. The respondent judge reversed the city court's ruling, concluding that, pursuant to our decision in State v. Weakland , 244 Ariz. 79, 418 P.3d 446 (App. 2017), the good-faith exception to the exclusionary rule would apply, and it therefore did not need to address the other grounds raised by the state. Soza then filed the instant petition for special action relief.
¶ 5 Soza argues that the breath-test evidence must be excluded because he did not voluntarily agree to the test, and therefore the evidence was not obtained in compliance with § 28-1321, which directs that "[i]f a person under arrest refuses to submit to the test" "[t]he test shall not be given." The state argues that, even if the officer failed to comply with the statute, suppression of the evidence was not required.
Principles of Law and Analysis
Implied Consent and Chemical Testing
¶ 6 Arizona adopted an implied consent regime in 1969. See 1969 Ariz. Sess. Laws, ch. 41, § 1.[1] The statute provided:
Any person who operates a motor vehicle upon the public highways of this state shall be deemed to have given consent ... to a chemical test or tests of his blood, *1268 breath, or urine for the purpose of determining the alcoholic content of his blood if arrested for any offense arising out of acts alleged to have been committed while the person was driving or in actual physical control of a motor vehicle while under the influence of intoxicating liquor.
1969 Ariz. Sess. Laws, ch. 41, § 1. The statute further dictated, "If a person under arrest refuses to submit to a chemical test ... none shall be given." Id. The statute directed the Department of Motor Vehicles to suspend the arrested person's license for so refusing. Id.
¶ 7 As our supreme court recognized, "[t]he purpose of the Implied Consent Law is to remove from the highways of this state drivers who are a menace to themselves and to others because they operate a motor vehicle while under the influence of intoxicating liquor." Campbell v. Superior Court , 106 Ariz. 542, 546, 479 P.2d 685, 689 (1971). In upholding the laws against constitutional challenge, the Campbell court relied on the United States Supreme Court's decision in Schmerber v. California , 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966), which held that a blood draw did not violate the Fourth Amendment when taken based on exigent circumstances and as a search incident to arrest, and State v. Berg , 76 Ariz. 96, 259 P.2d 261 (1953), overruled on other grounds by State v. Pina , 94 Ariz. 243, 383 P.2d 167 (1963), its own opinion which had upheld forcibly-administered breath tests. Campbell , 106 Ariz. at 547, 479 P.2d at 690. As to the taking of a test after an arrestee's refusal, the court explained, the law "does not give a person a 'right' to refuse to submit to the test[,] only the physical power." Id. at 549, 479 P.2d at 692.
¶ 8 Subsequently, in State v. Cocio , 147 Ariz. 277, 709 P.2d 1336 (1985), and State v. Brita , 154 Ariz. 517, 744 P.2d 429 (App. 1987), approved in part, vacated in part on other grounds, 158 Ariz. 121, 761 P.2d 1025 (1988), our courts limited the admissibility of blood-draw evidence taken under the implied consent statutes. In Cocio , the court did so by limiting admission of warrantless blood-draw evidence to that taken by medical personnel for a medical purpose and under exigent circumstances. 147 Ariz. at 286, 709 P.2d at 1345. And in Brita , it did so by barring admission of warrantless blood-draw evidence taken by law enforcement officers pre-arrest but with consent obtained after the giving of an implied consent admonition. 158 Ariz. at 123, 761 P.2d at 1027. The court of appeals in Brita concluded, and our supreme court agreed, that the implied consent statutes provided "the only circumstances in which a blood sample may be seized from a person suspected of driving while intoxicated." Brita , 154 Ariz. at 521, 744 P.2d at 433. And this did not include the pre-arrest drawing of blood without a warrant. Id . This court noted it had "assumed ... that a violation by police officers" of the statutes "would give rise to exclusion of evidence thereby obtained, just as would a violation of a constitutional right under the [F]ourth [A]mendment. The state does not argue otherwise in this case." Id. at 522 n.2, 744 P.2d at 434. In approving that analysis, our supreme court concluded suppression was appropriate. Brita, 158 Ariz. at 123, 761 P.2d at 1027.
¶ 9 Later, in Collins v. Superior Court , 158 Ariz. 145, 146-47, 761 P.2d 1049, 1050-51 (1988), stating that its decisions in " Cocio and Brita [we]re dispositive of th[e] matter," our supreme court concluded that, when blood was drawn after the defendant had refused a test, even pursuant to a search warrant, it was not admissible. In so doing, the court relied on decisions from several other states, noting they had also concluded that blood taken pursuant to a warrant was inadmissible because the implied consent laws did not provide for taking of blood evidence by warrant. Id.
¶ 10 "In what obviously was a response to the court's holding in Collins , the legislature amended the statute in 1990." State v. Clary , 196 Ariz. 610, ¶ 12, 2 P.3d 1255 (App. 2000) ; see also State v. Stanley , 217 Ariz. 253, 257, 172 P.3d 848, 852 (App. 2007). "The 1990 amendment provides that if an arrested person refuses to submit to the designated test, 'the test shall not be given, except ... pursuant to a search warrant.' "[2]
*1269 Clary , 196 Ariz. 610, ¶ 12, 2 P.3d 1255 (quoting 1990 Ariz. Sess. Laws, ch. 375, § 7). In Clary , this court discussed that change and further determined that reasonable, physical force could be used to obtain a blood test pursuant to a warrant. Id. ¶ 15. We noted the legislature's "heightened legislative effort" in the years since Campbell as evidence of a "policy shift" under which "simple revocation of a driver's license for failure to consent to a chemical test" was no longer "a sufficient sanction." Id. ; see also Koller v. Ariz. Dep't. of Transp., Motor Vehicle Div. , 195 Ariz. 343, ¶ 25, 988 P.2d 128 (App. 1999) (noting policy shift towards increasing criminal penalties and facilitating prosecution of DUIs).
¶ 11 A decade later, in Carrillo v. Houser , 224 Ariz. 463, ¶ 4, 232 P.3d 1245 (2010), our supreme court revisited the implied consent statutes, concluding that § 28-1321"generally does not authorize law enforcement officers to administer [a] test without a warrant unless the arrestee expressly agrees to the test." Carrillo , 224 Ariz. 463, ¶ 1, 232 P.3d 1245. Thus, the mere fact that the defendant does not resist the test is insufficient under the statute; consent must be express. Id . ¶ 19. The court explained that the consent requirement "assures that no physical violence or coercion will occur against a person who is non-cooperative with a law officer's effort to obtain necessary chemical evidence of intoxication." Id. ¶ 13 (quoting Sherrill v. Dep't of Transp. , 165 Ariz. 495, 498, 799 P.2d 836, 839 (1990) ). The court pointed out that prompt license suspension was the method the legislature had chosen: "Rather than statutorily authorizing the warrantless administration of tests on such persons, the legislature instead deemed a failure to expressly agree to be a refusal, thus expanding the class of arrestees subject to administrative sanctions." Id. ¶ 13. The court further explained that it was "resolv[ing] th[e] case as a matter of statutory interpretation," and was not "address[ing] any constitutional issues raised by Carrillo," although it cited Schmerber parenthetically. Id. ¶ 21. It remanded the case to the lower court to determine if Carrillo had expressly agreed to the blood draw. Id. ¶ 22.
¶ 12 In 2013, the United States Supreme Court, in Missouri v. McNeely , determined that "the natural metabolization of alcohol in the bloodstream" did not provide a "per se exigency" justifying "an exception to the Fourth Amendment's warrant requirement" for blood draws. 569 U.S. 141, 145, 133 S.Ct. 1552, 185 L.Ed.2d 696 (2013). Any exigency must be determined from the totality of the circumstances and on a case-by-case basis. Id . After McNeely , our supreme court, in Valenzuela , returned to the question of consent in response to the implied consent admonition. 239 Ariz. 299, 371 P.3d 627. It concluded that both blood and breath tests were subject to Fourth Amendment protections and, although such tests could be taken after consent, consent gained after an admonition that consent was required was coerced. Id . ¶¶ 10 -11, 22. And further that, unless evidence was presented that the coercive effect of such an admonition was dispelled, the results of any subsequent tests would be inadmissible. Id . ¶ 31. The Valenzuela court acknowledged that it was deciding the case while awaiting the United States Supreme Court's consideration of two cases involving warrantless chemical testing. Id . n.2.[3]
¶ 13 Shortly thereafter, in Birchfield , the United States Supreme Court, for Fourth Amendment purposes, distinguished between blood draws and breath tests in the context of a search incident to arrest. --- U.S. ----, 136 S.Ct. 2160. The Supreme Court concluded that, unlike blood draws, breath tests do not "implicat[e] significant privacy concerns." Id. at 2176 (quoting Skinner v. Railway Labor Executives' Assoc. , 489 U.S. 602, 626, 109 S.Ct. 1402, 103 L.Ed.2d 639 (1989) ). Thus, the Court concluded that breath tests could be conducted as a search incident to arrest without a warrant. Id. at 2185. After Birchfield , this court rejected a claim that the Arizona Constitution gave greater protection than the U.S. Constitution to DUI arrestees as to breath tests.
*1270 Navarro , 241 Ariz. 19, ¶ 5, 382 P.3d 1234. Navarro noted that, sixteen years before the implied consent laws were adopted in Arizona, the court in Berg , 76 Ariz. 96, 259 P.2d 261, had held that the taking of warrantless breath tests did not violate either Article 2, § 8 or § 10 of the Arizona Constitution. Navarro , 241 Ariz. 19, ¶ 4, 382 P.3d 1234. However, Navarro did not address whether a court must exclude evidence of a breath test taken in violation of § 28-1321. Id. n.3.
¶ 14 In Diaz v. Bernini , we returned to the question "left open in Navarro -whether suppression [of breath test results] is required under Arizona's implied consent statute." 244 Ariz. 417, ¶ 9, 419 P.3d 950 (App. 2018). Citing Brita , we concluded that "the required agreement to testing under § 28-1321 must be voluntary. If it is not, the officer has not secured a statutorily required pre-condition to conduct testing, and the officer has taken the sample unlawfully." Diaz , 244 Ariz. 417, ¶ 14, 419 P.3d 950. We strongly implied that a defendant's consent gained after an admonition such as that condemned in Valenzuela would be deemed coerced under § 28-1321 as well, and any resulting search unlawful and resulting evidence inadmissible. Diaz , 244 Ariz. 417, ¶ 14, 419 P.3d 950. However, because the defendant had given express consent in response to an admonition without the language deemed coercive in Valenzuela , we ruled the tests results were admissible. Diaz , 244 Ariz. 417, ¶¶ 18, 20, 419 P.3d 950. Significantly, Diaz stopped short of actually reaching the question left open by Navarro as to whether a court must exclude evidence of a breath test taken in violation of § 28-1321.
¶ 15 Here, the officer who arrested Soza read him a coercive admonition telling him he was "require[d]" to submit to testing. See Valenzuela , 239 Ariz. 299, ¶ 5, 371 P.3d 627. Soza thereafter submitted to a breath test. No warrant required by § 28-1321 was obtained before the test was administered. Id . ¶ 10. The trial court found that Soza's consent to the test, coming after the admonition, was not voluntarily given. For the purposes of this opinion, we will assume without deciding that Soza's consent was involuntary as found by the trial court.[4] Consequently, because there was no consent and no warrant, the breath test violated § 28-1321.
¶ 16 Because a warrantless, non-consensual breath test incident to a lawful arrest does not raise significant privacy concerns so as to violate the U.S. Constitution or Arizona Constitution, Birchfield , 136 S.Ct. at 2184 ; Navarro , 241 Ariz. 19, ¶ 5, 382 P.3d 1234, we must now address the question left open by Diaz and Navarro -whether suppression of warrantless and non-consensual breath-test evidence is required under § 28-1321. We conclude that it is not because the Fourth Amendment exclusionary rule does not apply to § 28-1321.
Exclusionary Rule
¶ 17 The federal courts have long applied the exclusionary rule to remedy violations of Fourth and Fifth Amendment constitutional rights, but only in limited circumstances to statutory violations. See Sanchez-Llamas v. Oregon , 548 U.S. 331, 348, 126 S.Ct. 2669, 165 L.Ed.2d 557 (2006) (recognizing application of exclusionary rule for certain Fourth and Fifth Amendment violations but not for violation of consular notice law). "The few cases in which we have suppressed evidence for statutory violations ... the excluded evidence arose directly out of statutory violations that implicated important Fourth and Fifth Amendment interests." Id . (citing McNabb v. United States , 318 U.S. 332, 63 S.Ct. 608, 87 L.Ed. 819 (1943), and Miller v. United States , 357 U.S. 301, 78 S.Ct. 1190, 2 L.Ed.2d 1332 (1958) ); cf. Hudson v. Michigan , 547 U.S. 586, 599, 126 S.Ct. 2159, 165 L.Ed.2d 56 (2006) (suppression not required where manner of lawful search violated law).
¶ 18 The United States Supreme Court first adopted the exclusionary rule over 100 years ago. See Weeks v. United States , 232 U.S. 383, 34 S.Ct. 341, 58 L.Ed. 652 (1914). A half century later, the Court imposed the rule on the states as a matter of constitutional doctrine.
*1271 Mapp v. Ohio , 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961). In the years following, the Arizona Supreme Court, alluding to the supremacy clause of Article VI, clause 2, of the United States Constitution, overruled a series of search and seizure cases in light of Mapp . State v. Pina , 94 Ariz. 243, 245, 383 P.2d 167 (1963), overruled on other grounds by Yuma Cty. Attorney v. McGuire , 111 Ariz. 437, 532 P.2d 157 (1975). A few decades later, however, the United States Supreme Court retreated from Mapp , recognizing the exclusionary rule as a "judicially created" doctrine that is "prudential rather than constitutionally mandated," Pa. Bd. of Probation & Parole v. Scott , 524 U.S. 357, 363, 118 S.Ct. 2014, 141 L.Ed.2d 344 (1998), and that any "reflexive" application of the doctrine was "expansive dicta," not required by the Constitution, Davis v. United States , 564 U.S. 229, 236-37, 131 S.Ct. 2419, 180 L.Ed.2d 285 (2011) (suppression not "a personal constitutional right," and the Fourth Amendment "says nothing about suppressing evidence").
¶ 19 The supremacy clauses of both the United States Constitution and the Arizona Constitution compel our courts to follow rulings of the United States Supreme Court on matters of federal statutory and constitutional interpretation. U.S. Const. art. VI, cl. 2 ; Ariz. Const. art. II, § 3 ; see McLaughlin v. Jones , 243 Ariz. 29, ¶ 37, 401 P.3d 492 (2017). Beyond matters of federal statutory and constitutional interpretation, state courts are bound by state law. Erie R. Co. v. Tompkins , 304 U.S. 64, 78, 58 S.Ct. 817, 82 L.Ed. 1188 (1938) ("Except in matters governed by the Federal Constitution or by acts of Congress, the law to be applied in any case is the law of the state."); see Pool v. Superior Court , 139 Ariz. 98, 108, 677 P.2d 261, 271 (1984) (decisions of United States Supreme Court are binding with regard to interpretation of federal constitution; interpretation of state constitution is the province of state courts).
¶ 20 Arizona courts have also adopted the exclusionary rule as a state-court "prudential doctrine" to remedy Fourth Amendment violations for its deterrent effect. Valenzuela, 239 Ariz. 299, ¶¶ 28-33, 371 P.3d 627. Our courts have nonetheless endeavored to keep the application of the rule in state matters the same as its application by the federal courts. In State v. Bolt , 142 Ariz. 260, 689 P.2d 519 (1984), our supreme court considered extending the state application of the exclusionary rule beyond the federal application as to state constitutional violations. In particular, whether state courts should adopt the federal "independent source rule" exception to the exclusionary rule. The court determined that, although there were sound policy reasons for not adopting the exception, it was better to keep the application of the exclusionary rule uniform and not apply the state exclusionary rule more broadly than the federal rule. Id. at 268-69, 689 P.2d at 527-28. It concluded that, though it may not always agree with the United States Supreme Court's exclusionary rule jurisprudence, it would "so long as possible, ... keep the Arizona exclusionary rule uniform with the federal," because "one of the few things worse than a single exclusionary rule is two different exclusionary rules." Id. at 268-69, 689 P.2d at 527-28.
¶ 21 Our courts, like the federal courts, have not employed the exclusionary rule for statutory violations, unless the statute implicates Fourth Amendment rights. State v. Moorman , 154 Ariz. 578, 584, 744 P.2d 679, 685 (1987) (exclusionary rule inapplicable to violations of prison search rules);[5] State v. Bishop , 137 Ariz. 361, 363, 670 P.2d 1185, 1187 (App. 1983) (no right to suppress evidence when prison rules violated, only when Fourth Amendment rights infringed); cf. Collins v. Superior Court, 158 Ariz. 145, 146-47, 761 P.2d 1049, 1050-51 (1988) (excluding evidence in reliance on Cocio and Brita , both of which addressed statutorily infirm blood draws while acknowledging their constitutional *1272 dimension).[6] When a statute does not implicate Fourth Amendment rights, the remedy for any violation is left to the legislature. That is, as a general rule, because the legislature is charged with providing remedies for the violations of the laws it enacts, unless a law states that exclusion of evidence is a remedy for its violation, the exclusionary rule is not imposed by the courts. See, e.g. , Butler , 232 Ariz. 84, ¶ 22, 302 P.3d 609 (exclusionary rule inapplicable to violations of Parents' Bill of Rights because statute does not provide such remedy, noting law did not "provide that evidence will be suppressed if the statute is violated"); see also State v. Politte , 136 Ariz. 117, 125-26, 664 P.2d 661, 669-70 (App. 1982) (evidence not excluded when state wiretap law lacked exclusionary rule provision although federal wiretap law did).[7] The legislature has not mandated exclusion as a remedy for a violation of § 28-1321.[8]
¶ 22 Soza nonetheless argues that the legislature has "occupied the field" by creating the implied consent statutory scheme for chemical testing. He thus maintains that chemical-test evidence is only admissible as allowed by the implied consent law. To be sure, the implied consent regime is extensive and was intended "to facilitate the criminal prosecution of those who drive while intoxicated," Koller , 195 Ariz. 343, ¶ 25, 988 P.2d 128, but that does not mean it is the only means by which competent evidence may be admitted. For example, A.R.S. § 28-1323 is a "statutory method [that] allows a proponent to admit scientific evidence without qualifying a witness as an expert, as required by the rules of evidence method." State ex rel. McDougall v. Johnson , 181 Ariz. 404, 407, 891 P.2d 871, 874 (App. 1994). However, where a proponent fails to comply with the statute, breath evidence may still be admissible under Rule 702, Ariz. R. Evid. See Seidel , 142 Ariz. at 590-91, 691 P.2d at 681-82 ; see also State v. Superior Court ex rel. Co. of Yavapai , 195 Ariz. 555, ¶ 11, 991 P.2d 258 (App. 1999). As the Seidel court stated, "when a conflict arises, or a statutory rule tends to engulf a general rule of admissibility, we must draw the line." Id. at 591, 691 P.2d at 682. Thus, even though § 28-1323 provides a relaxed statutory standard of admissibility of breath evidence, it did not supplant the rules of evidence. Cf. Summerfield v. Superior Court , 144 Ariz. 467, 472, 698 P.2d 712, 717 (1985) (where no evidence to suggest legislature intended to occupy field completely, room remains for future judicial action).
¶ 23 Finally, our dissenting colleague makes much of the failure of the legislature to curtail the courts' use of the exclusionary rule when it "revisited" § 13-3925 in 2000 after the blood-draw cases of Brita and Collins . The dissent concludes that the failure of the legislature to act after Brita and Collins to strip the courts of the power to exclude blood evidence amounts to its approval of the use of the exclusionary rule for violations of § 28-1321. See State v. Pennington , 149 Ariz. 167, 717 P.2d 471 (App. 1985) (failure of legislature to amend statute reflects agreement with court decision); but see, e.g., Smith v. Lewis , 157 Ariz. 510, 759 P.2d 1314 (1988) (despite legislative inaction, reversed earlier decision barring indigent representation by county public defenders in federal courts). It is dangerous to equate legislative inaction with approval. See Antonin Scalia & Bryan A. Garner, Reading Law: The Interpretation of Legal Texts 326 (2012) ("The mere failure of a legislature to correct extant lower-court, *1273 intermediate-court, or agency interpretations is not, in our view, a sound basis for believing the legislature has 'adopted' them."). Even so, all we can gather from the legislature's inaction post- Brita and Collins is that it approved the use of the exclusionary rule for the unlawful taking of blood evidence-an act that we fully agree implicates constitutional Fourth Amendment rights under our current jurisprudence. (We note that the legislature has not acted, despite Navarro , to declare that the taking of breath-test evidence incident to a lawful arrest without a warrant requires exclusion of evidence.)
¶ 24 Because the legislature nowhere in § 28-1321 prescribed suppression of evidence as the remedy for its violation, were we to do so of our own accord, we would be engrafting on the law a remedy neither provided for by the legislature nor required by the Constitution.[9] Consequently, exclusion of the evidence is not a remedy for the violation of § 28-1321 by the warrantless, non-consensual taking of a breath test as a search incident to a lawful arrest. Although the breath test here may have not complied with the statute, the trial court's suppressing the breath-test evidence as a sanction was improper.[10] And, because the exclusionary rule is not applicable here in the first instance, it was unnecessary for the respondent court to examine the administering officer's good faith to avoid its application.
Disposition
¶ 25 Because the respondent court correctly reversed the trial court's suppression of the breath-test evidence, albeit on different grounds, we accept special action jurisdiction, but we deny relief.
¶ 26 In my view, the majority has overlooked the holdings of Arizona's highest court in resolving the disputed question before us: whether we should suppress blood-alcohol evidence when that evidence has been acquired in violation of the "implied consent" statute, A.R.S. § 28-1321. In two separate cases, the Arizona Supreme Court has suppressed blood samples secured in violation of our state's implied-consent laws. Collins v. Superior Court , 158 Ariz. 145, 146-47, 761 P.2d 1049, 1050-51 (1988) (suppressing blood-test result secured by warrant when warrant process not contemplated by statute); State v. Brita , 158 Ariz. 121, 123, 761 P.2d 1025, 1027 (1988) (approving court of appeals decision which suppressed test result secured before arrest in violation of implied-consent statute). Neither of those cases has been reversed or questioned by subsequent supreme court jurisprudence. And, although the legislature amended the implied-consent statute to allow for the collection of samples by warrant, it did not revise the implied-consent law to restrict the application of the exclusionary rule in light of either Brita or Collins . See 1990 Ariz. Sess. Laws, ch. 375, § 7.
¶ 27 In those cases, the Arizona Supreme Court did not articulate why it had chosen to apply the rule of exclusion to violations of state statute. However, it fully understood that it was doing so. In Brita , the court expressly approved and adopted the court of appeals opinion on the merits of the underlying violation. Brita , 158 Ariz. at 123, 761 P.2d 1025 (characterizing the court of appeals opinion as a "thorough analysis we approve"). In that approved opinion, the court of appeals expressly noted that it was applying the exclusionary rule to a violation of state *1274 statute notwithstanding the absence of any Fourth Amendment violation. State v. Brita , 154 Ariz. 517, 522 n.2, 744 P.2d 429, 434 (App. 1987). And in Collins , the supreme court observed that blood taken in violation of state implied-consent laws should be "inadmissible" and it cited other jurisdictions that had similarly suppressed blood samples taken in violation of state law. See 158 Ariz. at 146-47, 761 P.2d at 1050-51.
¶ 28 In short, the Arizona Supreme Court has twice sanctioned violations of the implied-consent law by applying the exclusionary rule. As a subordinate court, I believe we are compelled to follow those cases and apply the rule to the similar violation here. See Lind v. Superior Court , 191 Ariz. 233, ¶ 20, 954 P.2d 1058 (1998).
¶ 29 The majority suggests that Brita and Collins are distinguishable on the grounds that they involved blood draws while this case instead involves a breath test for blood alcohol. Although this is a relevant distinction in the context of a Fourth Amendment claim, Brita and Collins address violations of state statute. The pertinent provision of our implied-consent statute violated here-that a test result can be secured only by voluntary submission or warrant-expressly sets forth that limitation for all types of blood-alcohol tests. See A.R.S. § 28-1321(D) (applying (D)(1) requirements to all tests itemized in "subsection A" including breath or urine tests).
¶ 30 Undeterred by the precedential weight of Brita and Collins , the majority contends that our supreme court has otherwise declined to apply the exclusionary rule to state statutory violations. The majority supports this claim with two Arizona Supreme Court cases that do not address that question. The first case, State v. Moorman , held that suppression is not a remedy for a violation of prison regulations governing the search of an inmate's cell. 154 Ariz. at 584, 744 P.2d at 685. The majority overlooks that prison regulations, while enabled by statute, are not themselves statutes and do not carry the weight of legislative deliberation and enactment. See A.R.S. § 41-1604 (enabling prison officials to develop rules). And, the case that Moorman cited in support of its terse holding, State v. Bishop , emphasizes that prisoners have diminished expectations of privacy, a factor not present here. Id. ; State v. Bishop , 137 Ariz. 361, 363, 670 P.2d 1185, 1187 (App. 1983). Further, any ambiguity about the scope of the court's ruling in Moorman was resolved a year later when the supreme court decided Brita and Collins : cases that, as seen, manifestly did apply the exclusionary rule to violations of state statute.
¶ 31 The majority's reliance on the more recent case of Butler , 232 Ariz. 84, ¶ 22, 302 P.3d 609, is similarly misplaced. There, our supreme court "decline[d] to address" a juvenile's argument that violation of the Parents' Bill of Rights would justify suppression of his blood test. Id. Although the court mentioned that the "parental rights" statute contained no provision for suppression, it concluded that the juvenile lacked standing to assert his parents' rights. Id. It did not address whether, or to what extent, the Court would view itself empowered to apply an exclusionary rule notwithstanding the lack of an express statutory provision for exclusion. Id. Thus, the dicta in Butler suggests at most that the express terms of a state statute might be a relevant factor in analyzing whether suppression would be required under a statutory provision. Of course, it would always be a relevant factor-if a state statute were to mandate suppression as a remedy for its violation, the court need not consider whether to apply a common law exclusionary rule at all.[11]
*1275 ¶ 32 The Arizona Court of Appeals has also applied the exclusionary rule to violations of Arizona statutes in the absence of any legislative guidance to the contrary. Specifically, we routinely suppressed evidence collected in violation of our state's statute forbidding the nighttime execution of search warrants without good cause, A.R.S. § 13-3917. See State v. Rypkema , 144 Ariz. 585, 590, 698 P.2d 1304, 1309 (App. 1985) (noting statute demonstrates legislative concern for privacy and suppressing evidence secured in violation of state night-time search statute); State v. Wilson , 25 Ariz. App. 49, 50, 540 P.2d 1268 (App. 1975) (same). Thereafter, our legislature affirmatively directed that suppression should not be a remedy in such cases. A.R.S. § 13-3925 (evidence seized pursuant to warrant not suppressed except "as required by the United States Constitution and the constitution of this state"). This is a directive we have honored. See State v. Foncette , 238 Ariz. 42, ¶ 25, 356 P.3d 328 (App. 2015) (citing A.R.S. § 13-3925 in declining to suppress for night-time search violation). By contrast, the legislature has not similarly disclaimed application of a state exclusionary rule for violations of the implied-consent statute.
¶ 33 Nor has the Arizona Legislature expressed any general hostility to judicial remedies for violations of its criminal statutes. Section 13-3925, while comprehensively addressing issues related to the exclusionary rule, as seen, implicitly exempts violations of the state search warrant statute from the exclusionary rule. But none of its other five parts exempt any other state criminal statutes from the application of the rule. Rather, § 13-3925(A) affirmatively endorses the application of the exclusionary rule for violations of the Arizona Constitution. Id. (retaining exclusionary rule for evidence seized pursuant to search warrant in violation of "the constitution of this state").
¶ 34 Further, the legislature revisited § 13-3925 in 2000-after the Arizona Supreme Court had applied the exclusionary rule to substantive violations of the implied-consent law in Brita and Collins -yet set forth no general prohibition on the application of the exclusionary rule to state statutes. See 2000 Ariz. Sess. Laws, ch. 49, § 4. And, as noted, the amendments to the implied-consent statute itself, triggered by Collins , did not counter or criticize our supreme court's application of the exclusionary rule in that case. Thus, neither § 13-3925 nor § 28-1321 demonstrates any broad legislative hostility to judicial remedies designed to enforce the requirements of our state criminal statutes.
¶ 35 To the contrary, the legislative history of each provision and their amendments suggest legislative acquiescence to a state exclusionary rule-and specific legislative acquiescence to the application of the exclusionary rule to violations of the implied-consent statute.[12] See State v. Pennington , 149 Ariz. 167, 168, 717 P.2d 471, 472 (App. 1985) (citations omitted) ("It is presumed the legislature is aware of existing case law when it passes a statute, and that it is aware of court decisions interpreting the language of the statute; and when it retains the language upon which those decisions are based, it approves the interpretations."). Notably, the relevant statutory provision we address here-designed in part to avoid state coercion in securing a test in the absence of a warrant-certainly implicates nontrivial boundaries on an officer's entitlement to interfere with a suspect's privacy interest in their bodily integrity. See *1276 Carrillo v. Houser , 224 Ariz. 463, ¶ 13, 232 P.3d 1245 ("The 'consent' aspect of the statute also assures that no physical violence or coercion will occur against a person who is noncooperative with a law officer's effort to obtain necessary chemical evidence of intoxication." (quoting Sherrill v. Dep't of Transp. , 165 Ariz. 495, 498, 799 P.2d 836, 839 (1990) ) ); see also Ariz. Const. art. II, § 8 ("No person shall be disturbed in his private affairs, or his home invaded, without authority of law."). Given these stakes, our supreme court's application of the exclusionary rule conforms to and enforces the legislature's intent to confine officers to statutorily authorized means of securing a test.
¶ 36 Our supreme court's lone discussion on the virtues and costs of a state exclusionary rule is found in Bolt , 142 Ariz. at 265-69, 689 P.2d at 524-28. There, the court considered whether to erect a common-law exclusionary rule to sanction violations of state law. Specifically, the court addressed whether to impose the exclusionary rule to protect the state privacy interests articulated in article II, § 8 of the Arizona Constitution.
¶ 37 In doing so, the court harnessed the genius of the common law: the collective experience of the judicial branch. See Oliver Wendell Holmes, Jr., The Common Law 1 (1881) ("The life of the law has not been logic: it has been experience."). That experience, the court observed, was that law enforcement officers, driven to secure evidence of crime, tended to ignore constitutional limitations on the collection of evidence in the absence of an exclusionary rule. Bolt , 142 Ariz. at 266, 689 P.2d at 525 ("[S]tate law enforcement agencies usually ignored the Fourth Amendment while investigating criminal cases."). In reviewing pertinent jurisprudence, it concluded: "As in earlier decisions from both federal and state courts, the result in Mapp appears to have been reached as a matter of necessity, all other attempts at deterrence and enforcement of the constitutional provisions seemingly having failed." Id. (citing Mapp , 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 ). Speaking nearly twenty-five years after Mapp , the court further concluded that the exclusionary rule "had [arguably] accomplished just what was intended." Id. (describing the salutary effects of enhanced officer training post- Mapp ).
¶ 38 The court also identified and discussed the societal costs of exclusion. Id . at 267, 689 P.2d at 526 (acknowledging that "suppression certainly allows some who are guilty to go free"). And, it considered the objective data on the number of criminal cases affected by the resulting suppression of evidence. Id. at 267 n.9, 689 P.2d at 526 (concluding therefrom that "one might well conclude that the societal costs of enforcing the Fourth Amendment is not disproportionate to the benefit").[13] The court analyzed whether "other deterrents" short of exclusion may exist, but remained skeptical of the deterrent effect of tort remedies in practice given the expense and difficulty in prevailing on such claims. Id. at 268, 689 P.2d at 527.
¶ 39 In short, our state's highest court has both comprehensively addressed and imposed a state common-law exclusionary rule in Arizona. It has applied that rule to enforce the Arizona Constitution's protection of privacy interests set forth article II, § 8. Id. at 269, 689 P.2d at 528. And, it has applied the rule in practice to violations of the implied-consent law that implicate a person's privacy interest in bodily integrity.[14] See Brita , 158 Ariz. at 123, 761 P.2d at 1027 ; Collins , 158 Ariz. at 146, 761 P.2d at 1050. We are duty bound to follow both the reasoning of our highest court in Bolt and the courts' repeated application of a state-common-law exclusionary *1277 rule to the particular species of statutory violation here.
¶ 40 Our supreme court has also directed us to "keep the Arizona exclusionary rule uniform with the federal." Bolt , 142 Ariz. at 269, 689 P.2d at 528. For this reason, our supreme court's application of the good-faith exception in the context of analogous Fourth Amendment error would apply equally to this statutory violation. See Valenzuela , 239 Ariz. 299, ¶ 35, 371 P.3d 627 (applying good-faith exception to identical violation of Fourth Amendment in context of implied-consent statute).
¶ 41 The statutory violation here, unlike the violation in Valenzuela , occurred after our supreme court issued its opinion in Butler , 232 Ariz. 84, 302 P.3d 609. We therefore would apply this court's analysis in State v. Weakland, 244 Ariz. 79, ¶¶ 12, 24, 418 P.3d 446 (App. 2017) (finding good-faith exception for post- Butler arrests). I acknowledge that the trial court's application of the good-faith exception conforms with the majority opinion in that case. However, I dissented in Weakland , and would hold that the state is not entitled to the benefit of the good-faith exception for an arrest made after Butler .
¶ 42 Although I dissent as to remedy, I concur with my colleagues that the state violated A.R.S. § 28-1321(D) when it secured a sample of Mr. Soza's breath in the absence of either a warrant or his voluntary submission to the test.

Much of the following discussion involves cases addressing blood draws, not breath tests. Arizona's precedent for chemical testing by implied consent, although primarily dealing with blood draws, provides an important backdrop and guidance for the issues addressed here.

The statutes were renumbered to their current location in 1997. See 1996 Ariz. Sess. Laws, ch. 76, § 3; 1997 Ariz. Sess. Laws, ch. 1, § 102.

Bernard v. Minnesota , --- U.S. ----, 136 S.Ct. 615, 193 L.Ed.2d 495 (2015), and Birchfield v. North Dakota , --- U.S. ----, 136 S.Ct. 614, 193 L.Ed.2d 494 (2015).

The Valenzuela court concluded that the giving of a coercive admonition alone does not render consent involuntary; rather, a court must examine "the totality of the circumstances." 239 Ariz. 299, ¶ 21, 371 P.3d 627.

Our dissenting colleague takes issue with our citation of Moorman , noting it involved a "lesser expectation of privacy [among prison inmates], a factor not present here." This criticism overlooks that the very heart of the United States Supreme Court's holding in Birchfield , as well as this court's conclusions in Navarro and even going back to Berg , arise from the fundamental difference between the taking of breath and that of blood, and the determination that breath tests do not implicate significant privacy concerns.

In Bolt , our supreme court, in reaching its conclusion that the state and federal application should be uniform, in a footnote, discussed the propriety of courts allowing the use of evidence gathered in a way "the law does not permit." 142 Ariz. at 266 n.7, 689 P.2d at 525. However, in context, the discussion was limited to purposeful violations of the constitution, not of a statute. Id.

Our dissenting colleague criticizes our use of the Politte case here, asserting that the court stated that the wiretap evidence would have been suppressed had the defendant's argument been accepted. While true, it would have been so because, had the defendant been correct, Arizona's wiretap law would have been pre-empted by a federal statute that had an express exclusionary remedy that Arizona's statute did not . 136 Ariz. at 126, 664 P.2d at 670.

Our dissenting colleague argues that the courts, not the legislature, control the admission of evidence. Although that is certainly true, our courts have never mandated the suppression of evidence where, as here, constitutional rights are not implicated.

Our dissenting colleague states that this opinion has "overlooked" holdings of the Arizona Supreme Court as to suppression of illegally obtained blood evidence. That is incorrect. Illegally obtained blood evidence has been repeatedly held to implicate Fourth Amendment concerns. Here, however, we are dealing with breath-test evidence taken incident to a lawful arrest which has, repeatedly, been held not to implicate Fourth Amendment concerns. Simply stated, blood, along with the necessarily invasive methods of obtaining it, is different. Accordingly, our colleague's repeated references to "bodily integrity" have little, if any, application to this case.

We do not hold that there is no remedy for a violation of § 28-1321, but only that the remedy of suppression urged by Soza and imposed by the trial court was an unauthorized, and therefore improper, one.

The majority also cites Politte , 136 Ariz. at 125-26, 664 P.2d at 669-70, for the proposition that "evidence [was] not excluded when state wiretap law lacked [an] exclusionary rule provision although federal wiretap law did." Politte noted Arizona's statute did not contain an express exclusionary provision, whereas the federal statute did. Id. That distinction, however, was made in the context of a discussion of whether Arizona's wiretap statute was entirely invalid based on federal pre-emption. Id. The majority has overlooked that the court proceeded to discuss the defendant's claims of substantive statutory violations and found them meritless, but additionally noted that "[i]f the trial court had found these [state statutory] grounds meritorious the evidence would have been excluded ." Id. at 126-27, 129, 664 P.2d at 670-71, 73 (emphasis added).

The majority implies that legislative pronouncements on the admissibility of evidence should control. However, the Arizona Constitution provides the judicial branch, not the legislative branch, with the "[p]ower to make rules relative to all procedural matters in any court." Ariz. Const. art. VI, § 5 (5). Although our supreme court has welcomed legislative involvement in evidentiary questions when that involvement does not conflict with its own rules or when the legislation addresses a matter of substantive law, our supreme court has held that it is the judicial branch, not the legislative branch, which is presumptively empowered to determine what evidence is admissible in an Arizona courtroom. See Seisinger v. Siebel , 220 Ariz. 85, ¶ 7, 203 P.3d 483 (2009) (Arizona Constitution vests supreme court with power "to make rules relative to all procedural matters in any court"; rules of evidence " 'generally ... procedural in nature.' " (quoting Collins , 142 Ariz. at 590, 691 P.2d at 681 ) ).

Since our supreme court's analysis of the costs of the exclusionary rule in 1984, the United States Supreme Court has substantially limited the application of the exclusionary rule by expanding the scope of the good-faith exception. See Davis , 564 U.S. at 237, 131 S.Ct. 2419 (reviewing how the Court has narrowed the scope of the exclusionary rule since Mapp ). Thus, the "societal costs" of the exclusionary rule are markedly less today than when our state supreme court last analyzed them in 1984.

Here, bodily integrity refers to the legislature's interest in avoiding physical confrontations between an officer who might seek to force an unwilling defendant to conduct a test of breath or blood: both of which are impractical to conduct without the defendant's cooperation. See Carrillo , 224 Ariz. 463, ¶ 13, 232 P.3d 1245 (acknowledging this legislative interest expressed by A.R.S. § 28-1321(D) ).